## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| TIMES NAVIGATION INC.<br><br>Mesogeion Av. 2-4 Athens<br>Building A, 17th Floor<br>Athens, Greece 11527<br><br><div align=right>*Plaintiff*,</div><br>v.<br><br>SCOTT BESSENT, in his official capacity as<br>Secretary of the Treasury,<br><br>1500 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20220<br><br>U.S. DEPARTMENT OF THE TREASURY,<br><br>1500 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20220<br><br>BRADLEY SMITH, in his official capacity as<br>Director of the U.S. Department of the Treasury's<br>Office of Foreign Assets Control,<br><br>1500 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20220<br><br><div align=right>*Defendants*.</div> | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Times Navigation Inc. ("Times") seeks declaratory and injunctive relief and states as follows:

**INTRODUCTION**

1.      Times brings this action to challenge the legal authority of The U.S. Department of the Treasury's ("Treasury") Office of Foreign Assets Control ("OFAC") to impose civil penalties against it administratively in now-pending administrative proceedings.   Although Congress authorized civil penalties for violations of the International Emergency Economic Powers Act ("IEEPA"), Congress authorized federal courts to impose those penalties and did not authorize those penalties to be imposed administratively.  *See* 50 U.S.C. § 1705 (authorizing civil penalties under IEEPA), 28 U.S.C. § 1355(a) (providing jurisdiction in federal district court over civil penalty actions).   Additionally, displacing the judicial process for imposing civil penalties and replacing it with an administrative process violates Times' right to an independent Article III judge, the right to a jury trial secured by the Seventh Amendment, and the due process required by the Fifth Amendment.   Finally, OFAC's regulations make OFAC's Director the final decisionmaker in imposing civil penalties, which is a responsibility that can only be held by principal officers who have been nominated by the President and confirmed by the Senate, but the Director has not been appointed as a principal officer in accordance with the Appointments Clause. U.S. Const., art. II, cl. 2.

**JURISDICTION AND VENUE**

2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1361.

3.      Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, respectively, Federal Rules of Civil Procedure 57 and 65, and the inherent equitable powers of a United States District Court.

4.      Venue is proper in this District under 28 U.S.C. § 1391(e)(1).

## THE PARTIES

5.      Plaintiff Times is a Greek shipping company located at Mesogeion Av. 2-4 Athens, Building A, 17th Floor, Athens, Greece 11527.

6.      Defendant Scott Bessent is the Secretary of the Treasury.  He is sued in his official capacity.

7.      Defendant U.S. Department of the Treasury is a Department of the Executive Branch of the United States Government.

8.      Defendant Bradley Smith is the Director of Treasury's Office of Foreign Assets Control.  He is sued in his official capacity.

## FACTUAL ALLEGATIONS

9.      Times is a Greek shipping company that OFAC alleges caused U.S. sanctions on Iran to be violated.  Those sanctions were imposed pursuant to the International Emergency Economic Powers Act ("IEEPA").  Times entered into sale-leaseback agreements for three vessels with YieldStreet, Inc., a private investment company based in the United States.  And OFAC alleges that on 11 occasions between April 26, 2018, and March 5, 2019, Times transported Iranian-origin minerals and metals on behalf of sub-charterers of those three vessels, which OFAC alleges caused YieldStreet, a U.S. entity, to violate U.S. sanctions on Iran.

10.      Although OFAC's claim that Times somehow caused YieldStreet to violate U.S. sanctions is fundamentally flawed on the merits, Times' principal dispute in this litigation is with OFAC's attempt to determine Times' liability and assess civil penalties through administrative proceedings in which OFAC acts as "prosecutor, jury, and judge."  *AT&T, Inc. v. FCC*, 149 F.4th 491, 502 (5th Cir. 2025).  After extensive discussions between OFAC and Times, OFAC issued a Pre-Penalty Notice ("PPN") for Times on May 19, 2026, seeking a civil penalty of $4,075,827.

- 3 -

That penalty is largely based on the OFAC Director's finding that the violation was egregious. *See also* 31 C.F.R. § 501 App. A(V)(B)(1) ("A determination that a case is 'egregious' will be made by the Director or Deputy Director."). Times has been given until July 10, 2026, to object before OFAC decides whether to grant itself the penalty that it seeks in accordance with OFAC's own self-indulgent regulations. (Ex. A. at 13 (citing 31 C.F.R. § 501 App. A(V)(A)(3))).

11.    The PPN is signed by Bradley Smith as the Director of OFAC. The PPN is significant because "[t]he amount of the proposed civil penalty in the Pre-Penalty Notice will be the presumptive starting point for calculation of the civil penalty amount in the Penalty Notice." *Id.* App. A(V)(B)(3). OFAC's regulations caution that "failure to respond to the Pre-Penalty Notice may result in the imposition of a civil monetary penalty." *Id.* App. A(V)(A)(1)(b)(ii). More specifically, OFAC advises that, "[i]n the absence of a response to a Pre-Penalty Notice, the penalty amount set forth in the Penalty Notice will generally be the same as the proposed penalty set forth in the Pre-Penalty Notice." *Id.* § 501 App. A(V)(A)(5). But whether or not Times responds to the PPN, the PPN advises that "OFAC may issue a Penalty Notice." The same Director of OFAC who sent the PPN will issue the Penalty Notice if "OFAC concludes that a civil monetary penalty is warranted." 31 C.F.R. § 501 App. A(V)(A)(3). And because "OFAC [] does not believe that an administrative appeal process is warranted," 74 Fed. Reg. 57600 (Nov. 9, 2009), "[t]he issuance of a Penalty Notice constitutes final agency action with respect to the violation(s) for which the penalty is assessed." 31 C.F.R. § 501 App. A(V)(A)(5); *see id.* § 501 App. A(V)(A)(3) ("A Penalty Notice constitutes a final agency determination that a violation has occurred."). Thus, the OFAC Director has the last word on the Executive Branch's decision as to whether to impose civil penalties and the amount of those penalties.

- 4 -

### COUNT I:  OFAC HAS NO CONGRESSIONAL AUTHORITY TO IMPOSE CIVIL PENALTIES ADMINISTRATIVELY UNDER IEEPA

12. Times re-alleges and incorporates by reference each and every allegation set forth in all preceding paragraphs.

13. Congress provided civil and criminal penalties in IEEPA, but it did not give OFAC the power to impose either administratively. *See* 50 U.S.C. § 1705. Section 1705(b) provides that "[a] civil penalty may be imposed on any person who commits an unlawful act described in subsection (a) . . .," but it does not identify who has the power to impose such civil penalties. But the answer to that question is clear because, "[f]rom the earliest history of the government, the jurisdiction over actions to recover penalties and forfeitures has been placed in the district court." *Lees v. United States*, 150 U.S. 476, 478 (1893) (citing Judiciary Act of Sept. 24, 1789, § 9, 1 Stat. 76). Thus, Congress legislated against the long-standing backdrop of statutory provisions that conferred jurisdiction on the federal district courts to impose civil penalties. *See* 28 U.S.C. § 1355(a) ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress . . . ."); *see also* 28 U.S.C. § 1345 ("Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.").

14. IEEPA's legislative history confirms that Congress did not intend to provide OFAC with the authority to impose civil penalties under IEEPA. IEEPA was enacted to reform the Trading With the Enemy Act ("TWEA"), which granted the Executive Branch broad powers to impose both wartime and peacetime economic sanctions. *See* H.R. No. 95-459 (95th Cong, 1st Sess. 1977). Through IEEPA, "Congress split TWEA into two separate statutes." *Learning Res.,*

*Inc. v. Trump*, 146 S. Ct. 628, 694 (2026) (Kavanaugh, J., dissenting). The Executive Branch's broad powers under TWEA were limited to "wartime only. And Congress enacted a separate statute, IEEPA," which circumscribed the Executive Branch's authority "during peacetime national emergencies." *Id.*; *see Regan v. Wald*, 468 U.S. 222, 225–28 (1984); *Dames & Moore v. Regan*, 453 U.S. 654, 672–73 (1981). In doing so, IEEPA's civil penalty provision departed from TWEA's civil penalty provision. TWEA expressly confers power to the Secretary of the Treasury to impose civil penalties. *See* 50 U.S.C. § 4315(b)(1) ("A civil penalty of not to exceed $50,000 may be imposed by the Secretary of the Treasury. . . ."). In allowing these administrative wartime civil penalties under TWEA, Congress sought to ensure procedural fairness by specifying that "[t]he penalties provided under this subsection may be imposed only on the record after opportunity for an agency hearing in accordance with sections 554 through 557 of title 5, with the right to prehearing discovery" and Congress provided for judicial review. 50 U.S.C. §§ 4315(b)(3) & (4).

15. In sharp contrast, Congress did not extend TWEA's wartime administrative civil penalty process into the peacetime context of IEEPA. Congress dropped the "imposed by the Secretary of the Treasury" language from TWEA when it split off IEEPA, along with all language concerning how administrative penalties could be imposed, and such changes are meaningful. It is well-established that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States,* 464 U.S. 16, 23 (1983); *see Shays v. FEC,* 528 F.3d 914, 934 (D.C. Cir. 2008) ("[W]hen Congress uses different language in different sections of a statute, it does so intentionally.").

16.    The Supreme Court recently rejected the government's attempt to argue that whatever authority TWEA provided the Executive Branch carried over into IEEPA. *See Learning Res.*, 146 S. Ct. at 644 (explaining that, "[f]inding no support in the statute the President invoked [IEEPA], the Government turns to one he did not: IEEPA's predecessor, TWEA," and rejecting that extrapolation). In *Learning Resources*, the Court struck down President Trump's attempt to impose tariffs through IEEPA because IEEPA's statutory language did not confer that authority. The Court explained: "When Congress has delegated its tariff powers, it has done so in explicit terms, and subject to strict limits. Congress has consistently used words like 'duty' in statutes delegating authority to impose tariffs." *Id.* at 639. By the same token, when Congress wanted civil penalties "imposed by the Secretary of the Treasury" in TWEA, it said so explicitly and subject to limits. 50 U.S.C. § 4315(b)(1). Congress' deletion of this language when enacting IEEPA's civil penalty provision is telling.

17.    Congress remained cognizant of the distinction that it made between the civil penalty provisions of TWEA and IEEPA. When Congress subsequently enacted the Cuban Democracy Act of 1992 that placed sanctions directly on Cuba, it specified that the "Secretary of the Treasury shall exercise the authorities of the Trading With the Enemy Act in enforcing" the statute and that "[t]he penalties set forth in section 16 of the Trading With the Enemy Act shall apply." 22 U.S.C. § 6009(a) & (d). Thus, Congress recognized that, if it wanted peacetime civil penalties imposed through TWEA's pre-IEEPA framework, it needed to say so explicitly.

18.    Indeed, whenever Congress seeks to have civil penalties imposed administratively it says so explicitly. Long before IEEPA, Congress specifically authorized the Customs Service to impose administrative civil penalties for violations of customs laws. 19 U.S.C. § 1592. And post IEEPA, when Congress created another sanctions regime through that Foreign Narcotics Kingpin

Designation Act of 1999, it specifically authorized "[a] civil penalty not to exceed $1,000,000 may be imposed by the Secretary of the Treasury."  21 U.S.C. § 1906(b).  In other contexts, Congress provides agencies with the option to seek civil penalties judicially or administratively.  *Compare* 15 U.S.C. § 78u-1 (SEC authority to seek civil penalties judicially) *with* 15 U.S.C. § 78u-2 (SEC authority to seek lesser civil penalties administratively); *compare* 42 U.S.C. § 7524(b) (allowing EPA to seek civil penalties judicially) *with* 42 U.S.C. § 7524(c) (allowing EPA to seek civil penalties administratively).  Where Congress provides agencies with certain authority explicitly in some statutes but is silent in others, courts decline to read such authority into statutes that are silent.  *See Bobreski v. EPA*, 284 F. Supp. 2d 67, 77 (D.D.C. 2003) (refusing to find an ALJ had subpoena power in whistleblower claims under a statute that did not expressly confer that authority because Congress explicitly provides that authority in other statutory contexts).  And courts have done just that in this very context, refusing to read TWEA remedies into IEEPA where Congress did not expressly carry them over.  *See Milena Ship Mgmt. Co., Ltd. v. Newcomb*, 804 F. Supp. 855, 859 (E.D. La. 1992) (finding IEEPA's omission of a provision that exists in TWEA for appointing a custodian of blocked property to mean IEEPA has no such authority).

19.    OFAC unilaterally created the administrative process for imposing civil penalties under IEEPA by regulation (and not until 2009), *see* 31 C.F.R. § 501, App. A., but it is axiomatic that "an agency cannot adopt regulations or policies 'contrary to statute, nor exercise powers not delegated to it by Congress,'" *Pietersen v. U.S. Dep't of State*, 138 F.4th 552, 559 (D.C. Cir. 2025) (quoting *Ball, Ball & Brosamer, Inc. v. Reich*, 24 F.3d 1447, 1450 (D.C. Cir. 1994)).  And the Supreme Court has "long expressed 'reluctan[ce] to read into ambiguous statutory text' extraordinary delegations of Congress's powers."  *Learning Res.*, 146 S. Ct. at 638 (quoting *West Virginia v. EPA*, 597 U.S. 697, 723 (2022)).  There is a big difference between Congress giving

OFAC the right to seek civil penalties before an independent Article III tribunal and allowing OFAC to sit as prosecutor, judge, and jury in deciding whether to award itself civil penalties based on claims of liability that OFAC itself makes.  While Congress has given OFAC that authority in other contexts, it has not done so in IEEPA.  Thus, the administrative process that OFAC is using to assess whether to impose IEEPA civil penalties on Times is unlawful.

## COUNT II:  OFAC'S ADMINISTRATIVE PROCEEDINGS VIOLATE ARTICLE III AND THE FIFTH AND SEVENTH AMENDMENTS

20.     Times re-alleges and incorporates by reference each and every allegation set forth in all preceding paragraphs.

21.     By diverting civil penalty proceedings from federal courts to its own administrative proceedings, OFAC is denying Times its right to an independent Article III judge, a Seventh Amendment jury trial, and due process under the Fifth Amendment.  *See, e.g.*, *SEC v. Jarkesy*, 603 U.S. 109, 141 (2024) (Gorsuch, J., concurring) ("The Seventh Amendment's jury-trial right does not work alone.  It operates together with Article III and the Due Process Clause of the Fifth Amendment to limit how the government may go about depriving an individual of life, liberty, or property.  The Seventh Amendment guarantees the right to trial by jury.  Article III entitles individuals to an independent judge who will preside over that trial.  And due process promises any trial will be held in accord with time-honored principles.").

22.     The civil penalties that OFAC seeks are a legal remedy, as opposed to an equitable remedy, which means that such a claim would have been tried before a jury at common law and that means a jury trial right is required by the Seventh Amendment.  *See Jarkesy*, 603 U.S. at 122–23; *Sun-Valley Orchards, LLC v. U.S. Dep't of Labor*, 148 F.4th 121, 129 (3d Cir. 2025) ("The Supreme Court has long maintained that '[a] civil penalty was a type of remedy at common law

that could only be enforced in courts of law.'") (quoting *Tull v. United States*, 481 U.S. 412, 422 (1987)).

23.    Additionally, the enforcement of peacetime prohibitions on trade were left to juries at the time of Founding.  *See United States v. Hall*, 10 U.S. 171, 175 (1810) (jury resolving alleged civil violation of the Embargo Act of 1807).  For example, beginning with The Piracy Act of 1721, 8 Geo. 1, c. 24, Great Britain made it a crime for any person to in "any wise trade with any pirate, by truck, barter, exchange, or in any other matter" while "knowing him to be guilty of any such piracy, felony, or robbery."  Such offenders were "deemed, adjudged and taken to be guilty of piracy, felony, and robbery."  *Id.*  The accused enjoyed trial by jury if tried in England but, much to the chagrin of Americans, accused colonists were tried without a jury before vice admiralty courts.  Peter Leeson, *Rationality, Pirates, and the Law: A Retrospective*, 59 Am. U. L. Rev. 1219, 1222 (2010); *see also Jarkesy*, 603 U.S. at 146 (Gorsuch, J., concurring) ("Many of the matters added to vice-admiralty jurisdiction in the Colonies would have required juries in England."); 28 Hen. 8, c. 15 (1536) (providing for trial by jury of accused pirates).  As the Supreme Court observed, "[t]he abuses of these courts featured prominently in the calls for revolution," and were highlighted in the Declaration and Resolves of the First Continental Congress and Declaration of Independence.  *Jarkesy*, 603 U.S. at 147 (Gorsuch, J., concurring).  Accordingly, "the American people went to great lengths to prevent a backslide toward anything like the vice-admiralty courts," including by enshrining Article III and the Seventh Amendment in the Constitution.  *Id.* at 148–49; *see Close v. Calmar SS Corp.*, 44 F.R.D. 398, 403 (E.D. Pa. 1968) (explaining the Lord Coke led a successful effort to preserve jury trial rights for piracy and, "[t]he result was that admiralty jurisdiction in England, at the time of American Independence, was limited to prize cases and cases

involving contracts made at sea to be performed at sea.  All other maritime matters were adjudicated in common-law courts before juries.").

24.    The Continental Congress required that piracy be "tried by grand and petit juries according to the course of this common law."  *United States v. Mackenzie*, 30 F. Cas. 1160, 1163 (S.D.N.Y. 1843) (explaining that with "the new constitution," "piracies and felonies in their ordinary common-law acceptation should be referred to the judiciary, and be indicted and tried by juries").  After the Constitution was ratified, the First Congress enacted similar legislation to The Piracy Act of 1721 in The Crimes Act of 1790, 1 Stat. 112, but explicitly provided for trial by jury.  Section 12 made it a crime to "in any wise trade with any pirate knowing him as such," and those convicted faced imprisonment for up to three years and a fine up to $1,000.  As the Constitution requires, such criminal actions would proceed before courts and juries.  *See also id.* § 32 (requiring an indictment or information be filed within two years of the offense for non-capital crimes); *United States v. Smith*, 18 U.S. 153, 163 (1820) (Story, J.) (affirming jury's conviction for piracy); *United States v. Tully*, 28 F. Cas. 226, 228 (C.C. D. Mass. 1812) (Story, J.) (piracy trial before a jury).  Thus, the claim OFAC brings and the remedy it seeks are legal in nature and a jury is required in a proceeding overseen by an Article III judge.  That is the due process required by the Fifth Amendment.

### COUNT III: ADMINISTRATIVE PROCEEDINGS BEFORE THE OFAC DIRECTOR VIOLATE THE APPOINTMENTS CLAUSE

25.    OFAC's self-created regulatory structure that gives its own Director the last word in whether to impose civil penalties violates the Appointments Clause because the Director was neither appointed by the President nor confirmed by the Senate.  *See* U.S. Const. Art. II, § 2, cl. 2. In his role as OFAC Director, Bradley Smith sent Times the PPN and, in his capacity as OFAC Director, he also will decide whether to issue the Penalty Notice if "OFAC concludes that a civil

monetary penalty is warranted." 31 C.F.R. § 501 App. A(V)(A)(3). Because "OFAC [] does not believe that an administrative appeal process is warranted," 74 Fed. Reg. 57600 (Nov. 9, 2009), the Director's decision is final and his "issuance of a Penalty Notice constitutes final agency action with respect to the violation(s) for which the penalty is assessed." 31 C.F.R. § 501 App. A(V)(A)(5). But just as Congress never authorized OFAC to impose civil penalties administratively, the Constitution prevents OFAC from designating its own Director as the final decisionmaker to decide whether to impose civil penalties.

26.    The authority to impose civil penalties, like the more than $4 million civil penalty proposed here, is a substantial power reserved to principal officers, which requires a nomination by the President and Senate confirmation, U.S. Const. Art. II, § 2, cl. 2, but the OFAC Director is an inferior officer, appointed by the Secretary of the Treasury. Treasury Order 101-06(2)(g) (Sept. 20, 2022). "An inferior officer must be 'directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate.'" *United States v. Arthrex, Inc.*, 594 U.S. 1, 13 (2021) (quoting *Edmond v. United States*, 520 U.S. 651, 663 (1997)). Because there is no "review by a superior executive officer," any decision by the OFAC Director to impose civil penalties is an unconstitutional act by an improperly appointed principal officer. *Bahlul v. United States*, 77 F.4th 918, 928 (D.C. Cir. 2022); *see also Arthrex*, 594 U.S. at 17 (explaining that judicial review does not solve the constitutional infirmity in giving an inferior officer the final word as to the Executive Branch's position). An Appropriations Clause violation "invalidates actions taken pursuant to defective title," and that necessitates invalidating the administrative process for IEEPA civil penalties before OFAC's Director who was not appointed a principal officer. *Ryder v. United States*, 515 U.S. 177, 185 (1995); *see also Lucia v. SEC*, 585 U.S. 237, 251 (2018) ("the 'appropriate' remedy for an adjudication tainted with an appointments

violation is a new 'hearing before a properly appointed' official") (quoting *Ryder*, 515 U.S. at 183, 188).

<div align="center">

**PRAYER FOR RELIEF**

</div>

WHEREFORE, Times prays as follows:

1.  That this Court issue a declaratory judgment pursuant to 28 U.S.C. § 2201(a) that administrative proceedings to enforce civil penalties under IEEPA are unlawful;

2.  That this Court enjoin Defendants from continuing to pursue IEEPA civil penalties against Times administratively; and

3.  That this Court grant Times such other and further relief as the Court may determine to be just and proper under the circumstances.

Dated:  July 2, 2026                                Respectfully submitted,

/s/ *Christopher D. Man*
Christopher D. Man, D.C. Bar No. 453553
STEPTOE LLP
1330 Connecticut Ave., N.W.
Washington, D.C. 20036
CMan@steptoe.com
(202) 429-1330 (ph)
(202) 429-3902 (fax)

*Counsel for Times Navigation Inc.*